**Richard DeSIMONE a/k/a Frank Desmone**

v.

**John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut.**

**Civ. No. B–75–90.**

United States District Court, D. Connecticut.

Dec. 11, 1975.

Michael J. Churgin, Dennis E. Curtis, Stephen Wizner, Pierce H. O'Donnell, Michele Hermann, Jerome Frank Legal Services Organization, New Haven, Conn., for petitioner.

Peter Dorsey, U. S. Atty., Marjorie Wilhelm, Asst. U. S. Atty., New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

Petitioner, an inmate at the Federal Correctional Institution, Danbury, Connecticut, seeks judicial review of certain features of the good time credit policies of the Bureau of Prisons. Jurisdiction is founded upon either 28 U.S.C. § 2241 or 28 U.S.C. § 1361. *Taylor v. Blackwell,* 418 F.2d 199 (5 Cir. 1969); *United States ex rel. Colen v. Norton,* 335 F. Supp. 1316 (D.Conn.1972).

On April 26, 1974, following a plea of guilty to a charge of conspiracy to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, the petitioner was sentenced in the Eastern District of New York to three years imprisonment with a special parole term of seven years. During his incarceration, he has been earning a statutory good time allowance computed under the provision of 18 U.S.C. § 4161 which awards a credit on a prisoner's sentence of seven days each month "if the sentence is not less than three years and less than five years."

I

Petitioner first contends that, since he is exposed to a potential period of incarceration of ten years, his good time allowance should be based on that portion of § 4161 which grants a ten-day credit each month "if the sentence is ten years or more." The argument is not persuasive.

Prior to May 1, 1971, a narcotic offender was not eligible for probation or parole under 26 U.S.C. § 7237(d). However, that statute was repealed by Congress with the enactment of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.,* which became effective on May 1, 1971. The new Act was designed to permit greater flexibility in the imposition of restraints against those convicted on drug charges. *United States v. Richardson,* 483 F.2d 516, 518 (8 Cir. 1973). Although there is now neither a required minimum sentence nor a ban on probation or parole in narcotic cases, the Act does prescribe that a "special parole term" of varying length (depending on the type of drug offense and whether the defendant has a prior record) be imposed in addition to a regular sentence.

The Bureau of Prisons has construed the special parole term to be a separate and independent sanction which begins

after the regular sentence ends. Thus, if an inmate is paroled, the special parole term commences at the conclusion of the parole term of the basic sentence; if he is mandatorily released, the special parole term starts at the termination of supervision; and, if he is released because his sentence has expired, the special parole term begins upon his discharge from confinement. Bureau of Prisons Policy Statement 7500.43(4)(C) (1973).

An added consequence of this interpretation, which is under challenge here, is that the good time rate under § 4161 is computed solely on the "incarcerated segment" of the sentence and not on the total number of years calculated by adding the years of imprisonment imposed in the original sentence to the term of years of the special parole term. However, if an individual serves his basic sentence and is later returned to prison for violating his special parole term, the good time rate is determined by adding the original sentence imposed to the special parole term to arrive at the number of years on the § 4161 scale. Policy Statement 7500.43(b)(a).

The Bureau of Prisons' method of computation has significant effects upon a convicted narcotic offender's length of service in prison. For example, in the case at bar, the petitioner's mandatory release date, figured with a seven-day good time rate, is August 2, 1976, whereas, if his sentence of imprisonment is reduced by a ten-day per month deduction for good time, he would be discharged from prison on April 16, 1976.

In this Court's opinion the Bureau of Prisons has adopted a realistic and proper system of sentence computation for § 841 prisoners. The sentencing provisions of the Comprehensive Drug Abuse Prevention and Control Act were enacted in part to eliminate the harsh consequences of the mandatory minimum sentences under 21 U.S.C. § 174 and the no probation, no parole mandate of 26 U.S. C. § 7237. The main objectives of punishment—rehabilitation, deterrence and incapacitation by imprisonment—are better served under the new Act which authorizes a sentencing court, on a case by case basis, to impose a much wider range of sanctions and restraints upon individual narcotic offenders. Congress undoubtedly has the inherent power to adopt penal and rehabilitative measures in response to the drug traffic problem which afflicts our nation, including a mandatory special parole term for violators of the narcotic laws. *United States v. Simpson*, 481 F.2d 582, 584 (5 Cir. 1973); *United States v. Scales*, 464 F.2d 371, 376 (6 Cir. 1972).

■ There is little question that the special parole term is a separate and distinct form of restraint which begins after the completion of the punishment imposed by the court on the basic sentence. *United States v. Richardson*, supra, 483 F.2d at 518 n. 5. It is not part of an original sentence of imprisonment and it is in addition to, and not in lieu of, any other parole available to the prisoner. 21 U.S.C. § 841(c); *United States v. Mack*, 494 F.2d 1204, 1207 n. 3 (9 Cir. 1974); *United States v. Thomas*, 356 F. Supp. 173, 174 (E.D.N.Y.1972), aff'd without opinion, 474 F.2d 1336 (2 Cir. 1973). The Bureau of Prisons' separation of an inmate's regular sentence from his special parole term for the purpose of awarding good time, therefore, comports with the structural makeup of the sentencing portions of the Act.

In addition, the Bureau of Prisons' approach finds support in the Congressional plan for statutory good time set forth in § 4161. The statute specifically provides that a good time allowance is granted a prisoner who is "confined in a penal or correctional institution for a definite term." Cf. *Staudmier v. United States*, 496 F.2d 1191, 1192 (10 Cir. 1974). The good time allowance does not reduce the term of imprisonment, but only enables the inmate to complete a portion of his sentence outside prison walls. See, e. g., *Miller v. Taylor*, 313 F.2d 21, 22 (10 Cir. 1962); *Morden v. United States Board of Parole*, 376 F.

Supp. 226, 231 (W.D.Mo.1974); *Burgos v. United States Board of Parole*, 360 F.Supp. 316, 318 (N.D.Ill.1973). Since the special parole term, unlike a regular sentence, commences after incarceration, a good time credit for a sentence which becomes effective while the individual is in the civilian community would be contrary to the purpose of § 4161.

An analogous situation is the procedure utilized in computing good time for "split sentences" under 18 U.S.C. § 3651. If the period of incarceration on a "split sentence" is less than six months, good time is not awarded despite the fact that the remaining portions of the sentence may expose the individual to a potential lengthy term of imprisonment if he violates the conditions of his probation. However, as with the special parole violator, a "split sentence" offender earns good time based on the entire original sentence if he is reincarcerated for an infraction of the rules of probation.

For these reasons, statutory *good time* for narcotic offenders committed under § 841 should be computed on the basis of the incarcerated portion of the sentence only.

## II

The petitioner next argues that the disparity in good time based on an inmate's length of sentence is irrational and violative of the equal protection of the laws.

At the outset it is noted that the challenge to the computation system of good time credit under § 4161 is grounded neither on an alleged discrimination among similarly-situated members of plaintiff's class (i. e. prisoners serving sentences not less than three years and less than five years) nor on a claim that the various classifications are racially inspired. Cf. *McGinnis v. Royster*, 410 U.S. 263, 276, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Weise v. Syracuse University*, 522 F.2d 397, 405 (2 Cir. 1975). Rather, the plaintiff contends that there is no reasonable basis for granting good time at different rates depending on an inmate's maximum sentence of imprisonment. The Court disagrees.

The purpose of the statutory good time award is to aid the rehabilitative process and to mitigate the severity of punishment by rewarding a prisoner for his good conduct. 18 U.S.C. § 4161; cf. *Short v. United States*, 120 U.S.App.D.C. 165, 344 F.2d 550, 553–554 (1965). The apparent Congressional rationale behind the graduated scale set forth in § 4161 is to grant effective rewards for presumably demoralized long term offenders and yet not excessively lighten the *impact of incarceration for short* term inmates. Thus, in the enactment of the different categories for good time credits, there is a legitimate legislative goal which rationally promotes the rehabilitation of prisoners and enhances the efficient management of federal penal institutions. Under these circumstances, there has been a proper exercise of Congressional authority to curtail an inmate's term of imprisonment and to prescribe the perimeters and conditions for such curtailment. Cf. *Singleton v. Looney*, 218 F.2d 526, 527–528 (10 Cir. 1955). See also *McGinnis v. Royster*, supra.

Accordingly, the petition for a writ of habeas corpus is denied.