**David Bryant HAMILTON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 78–1139 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

Jan. 16, 1979.

David Bryant Hamilton, pro se.

Gary J. Takacs, Asst. U. S. Atty., Tampa, Fla., for defendant.

## ORDER

KRENTZMAN, District Judge.

In the complaint before the Court, styled "motion to vacate sentence: § 2255," the movant is attempting to secure good time and industrial good time credits and/or early release on parole, to which he believes he is entitled. This matter presents novel questions, because the movant is serving the sentence imposed by this Court in Canada, under the provisions of the Treaty with Canada on the Execution of Penal Sentences.

■ The Court has no jurisdiction to consider this complaint as a motion to reduce sentence. Such motions must be filed within 120 days of the time a sentence becomes final. Rule 35, Fed.R.Crim.P.

■ If the movant were serving his sentence in the United States, the Court would deny his motion. Good time and industrial good time credits are contingent upon a prisoner's continued good behavior and may be forfeited at any time prior to termination of imprisonment and parole. *See,* 18 U.S.C.A. §§ 4161–4166 and cases cited thereunder. The decision whether or not to grant parole is within the discretion of the Board of Parole and is not a matter for consideration by a district court. *See,* 18 U.S.C.A. § 4203 and cases cited thereunder.

It does not appear that this Court has jurisdiction to consider the merits of this motion. Article IV, § 1 of the Treaty reads as follows:

> Except as otherwise provided in this Treaty, the completion of a transferred Offender's sentence shall be carried out according to the laws and procedures of the Receiving State [in this case Canada], including the application of any provisions for reduction of the term of confinement by parole, conditional release or otherwise. . . .

Movant refers the Court to Article III, § 8 of the Treaty:

> The Sending State [in this case the United States] shall furnish to the Receiving State a statement showing the offense of which the Offender was convicted, the termination date of the sentence, the length of time already served by the prisoner and any credits to which the Offender is entitled on account of work done, good behavior or pretrial confinement. . . .

■ There is no allegation that the United States has failed to comply with this section. This section does not require that an offender be given good time credits or industrial good time credits for that portion of his sentence which he serves after he is transferred from the United States, nor does it affect the contingent nature of credits already earned. Likewise, it does not require a receiving state to parole an offender before the termination date of his sentence, even though the total time he has spent in confinement (pre-trial and post-trial combined) is a large percentage of his sentence, so long as he has not served all of his sentence.

Although movant refers to vacation of sentence, he does not allege that there were any improprieties in the procedure by which he was convicted and sentenced. If he did allege such improprieties, his motion would come under Article V of the Treaty:

> Each Party shall regulate by legislation the extent, if any, to which it will entertain collateral attacks upon the convictions or sentences handed down by it in the cases of Offenders who have been transferred by it. . . .

■ What movant does attack is the manner of execution of his sentence after transfer. Such an attack is not within an exception, and thus it falls under the general provisions of Article IV, § 1, *supra,* and must be presented to Canadian authorities.

It is clear that Congress recognized the distinction between the two types of attacks. The legislation implementing the Treaty,[1] P.L. 95–144, created, among other things, a new section 2256 in title 28:

---

1. Congressional approval of the Treaty was contingent upon the enactment of satisfactory legislation. The Senate resolution advising and consenting to the ratification of the Treaty was made subject to the following declaration:

*Jurisdiction of proceedings relating to transferred offenders*

When a treaty is in effect between the United States and a foreign country providing for the transfer of convicted offenders—

(1) the country in which the offender was convicted shall have exclusive jurisdiction and competence over proceedings seeking to challenge, modify, or set aside convictions or sentences handed down by a court of such country;

(2) all proceedings instituted by or on behalf of an offender transferred from the United States to a foreign country seeking to challenge, modify, or set aside the conviction or sentence upon which the transfer was based shall be brought in the court which would have jurisdiction and competence if the offender had not been transferred;

(3) all proceedings instituted by or on behalf of an offender transferred to the United States pertaining to the manner of execution in the United States of the sentence imposed by a foreign court shall be brought in the United States district court for the district in which the offender is confined or in which supervision is exercised and shall name the Attorney General and the official having immediate custody or exercising immediate supervision of the offender as respondents. The Attorney General shall defend against such proceedings; . . .

■ There is no statutory provision for jurisdiction or venue of proceedings pertaining to the manner of execution in a foreign country of a sentence imposed in the United States, either in 28 U.S.C. § 2256, or elsewhere.

"That the United States Government declares that it will not deposit its instrument of ratification until after the implementing legislation referred to in Article III has been enacted." (123 Cong.Rec. 12217 (July 19, 1977)).

Senator Sparkman, of the Committee on Foreign Relations, explained why the declaration was included in the resolution:

■ Both the Treaty and the laws implementing it indicate that the draftsmen intended a symmetrical system of legislation. The Treaty speaks, not of the United States and Canada, but of the receiving state and the sending state, and the provisions of the Treaty operate the same without regard to whether a particular transfer is from Canada to the United States or from the United States to Canada. The implementing legislation follows the same pattern. Among other things, sending states have jurisdiction over proceedings seeking to challenge, modify, or set aside convictions or sentences. Inasmuch as the United States is given jurisdiction over proceedings pertaining to the manner of execution of sentences of prisoners it receives, it follows that other receiving states, in this case Canada, have jurisdiction over proceedings pertaining to the manner of execution of sentences of prisoners they receive.

Such an interpretation explains why no statutory provision was enacted concerning jurisdiction of the instant case; the United States Congress has no ability either to grant or to deny jurisdiction to Canadian courts.

This interpretation also comports with comity; Canadian courts are the proper courts to supervise Canadian prisons.

Finally, this interpretation comports with reality; although Article III, § 2 of the United States Constitution states that judicial power extends "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .," and this is arguably such a case, this Court would not seek to compel Canadian penal authorities to follow

"This will prevent a situation of our having a treaty with no means of carrying out its objectives. This declaration will also allow a full examination of the implementing legislation, and the procedures and safeguards it provides." (123 Cong.Rec. 12216 (July 19, 1977)).

its orders. Such efforts would be costly, time consuming, inefficient, and potentially damaging to Canadian-American relations. This Treaty is the outgrowth of harmonious Canadian-American relations. It is not reasonable to assume that it was consummated with the intent to create situations which would endanger that same harmony.

Movant's remedy is to petition the Canadian authorities, first the administrative authorities which directly control the prison system, and, if they fail to satisfy him, then the Canadian courts.

For the foregoing reasons, this complaint is DISMISSED.

The Clerk is directed to return all of the papers which accompanied the complaint to the movant.