Adrian J. MASTRANGELO,
Petitioner-Appellee,

v.

UNITED STATES PAROLE COMMISSION, and Warden Dale Thomas,
Respondents-Appellants.

No. 1113, Docket 82–2056.

United States Court of Appeals,
Second Circuit.

Argued May 4, 1982.

Decided June 30, 1982.

Certiorari Denied Oct. 4, 1982.
See 103 S.Ct. 145.

---

2. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Carolyn Simpson, Asst. U. S. Atty., S.D. N.Y., New York City (John S. Martin, U. S. Atty., S.D.N.Y., Richard Papper, Asst. U. S. Atty., New York City, of counsel), for respondents-appellants.

Barry R. Ostrager, New York City (assisted by Thomas C. Rice, New Hyde Park, N.Y.), for petitioner-appellee.

Before FRIENDLY, KAUFMAN and PIERCE, Circuit Judges.

PER CURIAM:

Following a plea of guilty to charges of distribution of narcotics in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, petitioner Adrian Mastrangelo was sentenced on January 12, 1976, in the United States District Court for the Eastern District of Pennsylvania to 2½ years of imprisonment to be followed by 2 years of special parole. Special parole is mandatory whenever a prison sentence is imposed pursuant to 21 U.S.C. § 841(b)(1), (2). A few weeks later, on March 4, 1976, after conviction by a jury on charges of illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. App. § 1202(a)(1), petitioner was sentenced in the same court, apparently by a different judge,[1] to 1½ years of imprisonment, the court stating that "[s]aid sentence is to run consecutively to sentence imposed on [January 12, 1976]."

The two terms of imprisonment were aggregated by the United States Bureau of Prisons in accordance with sections 4161 and 4205 of Title 18 of the United States Code, and petitioner was considered to have begun serving the entire 4 years of imprisonment on January 12, 1976. He was paroled on October 7, 1977. Some time during May of 1981, after the period of regular parole had ended, petitioner committed certain "acts" which were regarded by the United States Parole Commission as violative of the conditions of special parole. The record does not reveal the nature of these "acts" or of the events that subsequently occurred before the Parole Commission. It seems apparent, however, that petitioner was incarcerated for the special parole violation. On November 2, 1981, petitioner

---

1. The only indication in the record as to the identities of the sentencing judges is contained in Mastrangelo's petition for a writ of habeas corpus wherein he states that sentence "# 1" was imposed by "Newcumber" and sentence "# 2" was imposed by "Hyuatt." We assume he means that the January 12, 1976, sentence was imposed by Judge Clarence C. Newcomer and the March 4, 1976, sentence by Judge Daniel H. Huyett, 3rd.

filed a petition for a writ of habeas corpus in the District Court for the Southern District of New York. He claimed that the entire sentence imposed on January 12, 1976, *i.e.*, the 2½-year term of imprisonment followed by the 2-year term of special parole, ran without interruption. He argued that the 1½-year term of imprisonment imposed on March 4, 1976, was to be consecutive with the 2½-year term of imprisonment, but concurrent with the 2 years of special parole.

On December 23, 1981, the district judge granted the writ, finding that "the second commitment order which states that its sentence "is to run consecutively to [the first] sentence . . . .' is altogether ambiguous." Judge Knapp stated that two possibilities existed:

> (1) that the Judge [who imposed the March 4th sentence] used the expression 'sentence' to mean 'term of imprisonment' and simply wanted the two terms of confinement to run consecutively, without regard to the circumstance that this would reduce the prisoner's period of supervision, or (2) that, as the government here contends, he wanted to interrupt the original sentence and place the petitioner on Special Parole at the end of the aggregate confinement.

Judge Knapp then stated that "any ambiguities that may exist in a sentence [must] be resolved in the prisoner's favor," citing *United States v. Wenger*, 457 F.2d 1082, 1083–84 (2d Cir.), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972).

On December 30, 1981, the district court entered an order of judgment granting the writ. On February 26, 1982, the government filed its notice of appeal to this Court.

### DISCUSSION

■ On these facts, we reject Mastrangelo's contention that the second sentence might have been intended to follow the 2½-year term of imprisonment from the first sentence, but to run concurrently with the 2-year term of special parole from the first sentence. Initially, the second judge's use of the word "consecutively" in the context

of sentencing does not lend itself to such an interpretation. It is said against this that it is unlikely that the second judge would have intended the second sentence to follow all of the first sentence sequence, *i.e.*, 2½ years of imprisonment, then 2 years of special parole, followed by the defendant returning to prison to serve an additional 1½-year term. Acceptance of that argument, however, does not create the ambiguity found by the district judge. It proves only that the second sentencing judge intended precisely what the Government contends, *i.e.*, that the two terms of imprisonment be aggregated into a four year term, to be followed by two years of special parole. This comports with the general implication of making an additional sentence consecutive rather than concurrent in that the total period of restraint is increased by the length of the second sentence. Moreover, consecutive sentences of imprisonment are always aggregated for various purposes, such as the computation of good time, *see* 18 U.S.C. § 4161. We must presume that the second judge also was aware of what was, at the time of sentencing, a well-established policy of the Bureau of Prisons to aggregate consecutive prison sentences, to be followed by a term of special parole, where the earlier sentence involved a special parole term. *See* Bureau of Prisons Policy Statement No. 5330.3 § 5(b).

■ Additionally, in light of the nature and purposes of the congressionally-mandated special parole term provided for in 21 U.S.C. § 841, the second judge could not plausibly have intended to impose the sentence as interpreted by the defendant. The mandatory special parole term is designed to test the offender's ability to lead a lawful life in the community. Special parole "is not part of an original sentence of imprisonment and it is in addition to, and not in lieu of, any other parole available to the prisoner." *DiSimone v. Norton*, 404 F.Supp. 964, 966 (D.Conn.1975). *See also United States v. Mack*, 494 F.2d 1204, 1207–08 n.3 (9th Cir. 1974), *cert. denied*, 421 U.S.

916, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975). If the conditions of special parole are violated, the parolee is returned to prison to serve the entire special term, not merely that portion which remained at the time of the violation. This provides an additional incentive for the parolee to lead a lawful life in the community for an extended period of time, hopefully creating habits conducive to continuing lawful ways after expiration of the term. To permit the special parole term to run concurrently with an ordinary term of imprisonment would undermine this process. Nor is it an answer that the intended effect might be preserved if the prisoner is released on regular parole from a term of imprisonment during some or all of the time that the special parole term is claimed to be running concurrently, since it cannot be known at the time the second sentence is imposed that the prisoner's future behavior and the parole board's future decision concerning the prisoner's destiny will have led to his release on regular parole by the time petitioner claims the special parole term should commence. Thus the statute does not permit the interpretation of the second sentence that the defendant advances.

■ On the meager record before us, however, we are unable to determine whether petitioner was informed by the Parole Commission or otherwise became aware that, following the completion of regular parole, he would still continue under the Commission's supervision but on special parole status. We do not know whether he was told that he would still be obliged to report to a parole officer; nor do we know what "acts" petitioner committed which led to his reincarceration. In short, we are concerned as to whether petitioner was or was not actually aware of his special parole status and the terms and conditions thereof. This becomes especially important if the acts he committed in May of 1981 were not in themselves criminal.[2]

If it develops that petitioner was not notified by the Parole Commission or otherwise made aware that he was still on special parole, he may have concluded that he was no longer under the Commission's supervision, in which event his reincarceration for a parole violation would be manifestly unfair and could require the granting of the writ. This conclusion would be bolstered if the acts which led to his reincarceration were the sort of "technical" parole violations described in note 2 set forth in the margin.

On the other hand, if it becomes apparent that petitioner was adequately made aware of his continuing status as a parolee and of the conditions of his special parole, he cannot now complain that the sentence was ambiguous.

Given the general purpose of parole, namely, supervising an offender's behavior during a period in which his ability to lead a law-abiding existence in society is tested, it is apparent to us that Congress' intention in enacting the special parole provisions included in the Drug Abuse Prevention and Control Act was that such parole would begin following the serving of all terms of imprisonment imposed upon an offender, and the completion of all regular parole periods. However, the offender must be made aware of his parole status and the terms and conditions associated therewith. A failure to do so may, at a minimum, seriously hamper the Commission from enforcing the special parole provisions of a sentence against an offender. We would emphasize that while notification must be given, this does not impose a requirement upon the Commission to give an offender formal notice each time there is a status change. So long as it is apparent that the offender knew or reasonably should have known of his status on special parole and its

---

**2.** For example, possible grounds for revocation of parole include: "(1) failure to report to the United States probation officer; (2) failure to submit monthly supervision reports; and (3) failure to report change in residence [28 C.F.R. § 2.44] [These are sometimes referred to as] 'technical' violations." *United States ex rel.*

terms and conditions, he can hardly complain of inadequate notice.[3]

We vacate the district judge's order of December 23, 1981, and the subsequent judgment of December 30, 1981, and remand the matter to the district court for an expansion of the record in order to determine whether petitioner adequately had been made aware of his special parole status and obligations when he committed the acts which purportedly were violations.

---

*Carrasquillo v. Thomas*, 527 F.Supp. 1105, 1107 (S.D.N.Y.1981).

**3.** If for example petitioner had continued to report to a parole officer after his term of regular parole had expired it could be reasonably inferred that he was aware of his special parole status.