UNITED STATES of America

v.

Gene Francis NEWBY and
Raynaldo Barber.

Gene Francis Newby (Appellant
in No. 92–5711).

Raynaldo Barber (Appellant
in No. 92–5712).

Nos. 92–5711, 92–5712.

United States Court of Appeals,
Third Circuit.

Argued Oct. 5, 1993.

Decided Nov. 30, 1993.

Sur Petition for Rehearing Dec. 29, 1993.

1144

John F. McMahon (argued), Federal Public Defender, Newark, NJ, for appellant Gene Francis Newby.

Timothy P. Reilly (argued), Audubon, NJ, for appellant Raynaldo Barber.

Michael Chertoff, U.S. Atty., Edna B. Axelrod (argued), R. David Walk, Jr., Asst. U.S. Attys., Newark, NJ, for appellee.

Before: HUTCHINSON, COWEN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Gene Francis Newby and Raynaldo Barber appealed from the sentences imposed by the district court as well as the underlying judgments convicting them of knowingly and willfully impeding and interfering with a federal prison guard in violation of 18 U.S.C. § 111(a)(1). Barber was also convicted of assaulting a federal prison guard in violation of section 111(a)(1). We conclude that the district court did not err and will affirm both the judgments of conviction and the sentences imposed.

### I.

While serving sentences in a federal prison, Newby and Barber engaged in an altercation with several prison guards. The prison authorities brought disciplinary charges against them for using intoxicants and assaulting prison guards in violation of prison rules. Following a hearing at the prison charging Newby and Barber solely with violating prison disciplinary regulations, both defendants were found to have violated the regulations. By reason of that violation of prison regulations, the prison authorities imposed on both a disciplinary transfer and segregation. In addition, Newby was deprived of one thousand days good time credits which he had previously earned for good conduct in the prison, while Barber was deprived of fifty-four days good time credits.

The United States subsequently indicted the defendants for the exact same conduct for which the prison disciplinary sanction was imposed, charging them with knowingly and willfully assaulting, impeding, and interfering with a federal prison guard, in violation of 18 U.S.C. § 111(a)(1). Both defendants moved to dismiss the indictment on double jeopardy grounds, contending that the prison disciplinary sanctions they received barred the criminal prosecution. The district court denied the application to dismiss.

Following a jury trial, Barber was convicted as charged, and Newby was convicted of impeding and interfering with, but not of assaulting, a federal prison guard. From the judgments of conviction, Newby and Barber bring these appeals, and also present a challenge to the sentences imposed. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

### II.

Both Newby and Barber argue that prosecuting them criminally, after they had been deprived of their good time credits through the prison disciplinary sanctions, violated the Double Jeopardy Clause of the Fifth Amendment to the Constitution. This presents a matter of constitutional interpretation for which we exercise plenary review. *See United States v. Ciancaglini,* 858 F.2d 923, 926 (3d Cir.1988).

We conclude that the defendants' argument lacks merit. We, as well as other courts, have held that a prison disciplinary hearing is not a prosecution for Double Jeopardy Clause purposes. Disciplinary sanctions imposed by prison authorities for infractions of prison regulations do not bar a subsequent criminal prosecution. *United States v. Stuckey,* 441 F.2d 1104 (3d Cir.) *(per curiam), cert. denied,* 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971); *United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989) ("administrative punishment im-

posed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the double jeopardy clause"); *Kerns v. Parratt,* 672 F.2d 690 (8th Cir.1982) (administrative sanction through loss of good time does not bar subsequent criminal prosecution).

In *Stuckey,* the defendant was charged with violating a prison regulation forbidding the possession of a "knife-like" instrument. Following a hearing at which he was found to have violated the regulation, Stuckey was placed in a segregation unit for 15 days. Subsequent to this prison disciplinary sanction, he was criminally charged and convicted of possessing the same instrument. *Stuckey,* 441 F.2d at 1105. Stuckey argued that the Double Jeopardy Clause barred the criminal prosecution. In a *per curiam* opinion, this Court held that "[a]dministrative sanctions imposed by prison officials upon a prisoner following his apprehension in connection with the commission of a crime is not a bar to subsequent prosecution for the crime in a court of competent jurisdiction." *Id.* at 1105–06.

The rationale for this rule is that the prison disciplinary proceeding is one to determine whether prison rules are broken and to maintain institutional order, rather than a prosecution for criminal conduct. The forfeiture of good time credits is not in any sense dependent upon whether the misconduct also may be criminal. *Pagliaro v. Cox,* 143 F.2d 900, 901 (8th Cir.1944).

█ Defendants have not presented any argument which affords them relief from the holding of *Stuckey.* Nor do the cited Supreme Court cases help them. Defendants rely upon *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper,* the Supreme Court held that a civil penalty, imposed after a criminal penalty, if so grossly disproportionate to the harm caused or "so divorced from any remedial goal," *id.* at 443, 109 S.Ct. at 1899, can

constitute a second punishment under the Double Jeopardy Clause. *Id.* at 446–51, 109 S.Ct. at 1901–03. The matter *sub judice* appears to be the reverse of *Halper.* We are asked to conclude that a civil penalty imposed before a criminal prosecution bars criminal prosecution, while *Halper* addressed the question whether a criminal penalty bars a civil penalty imposed subsequent to the criminal penalty.

Assuming that *Halper* applies to this case, we do not conclude that the facts in this case demonstrate that the prison disciplinary sanctions imposed on Newby and Barber are so grossly unrelated to prison authorities' remedial goal so as to constitute a "punishment" within the meaning of the Double Jeopardy Clause. The loss of one thousand days good time credits by defendant Newby, fifty-four days by Barber, and the disciplinary transfer and segregation for both, are not "so divorced from the remedial goal," *id.* at 443, 109 S.Ct. at 1899, of the government to encourage good conduct and to maintain order in the prison, given that the prison is a place where good order and discipline are paramount because of the concentration of convicted criminals. Good time credits are granted to reward good behavior and they are conditioned upon continuing good behavior.[1] The authorities' ability to revoke them is designed to encourage the inmates to continue their good conduct and, thus, is rationally related to the remedial goal.

Newby's loss of one thousand days good time credits may at first glance appear to be harsh; however, on examination it is necessary in order to bring home to him and others the importance of continued good behavior. A lesser sanction may have no effect on him, bearing in mind that he violently impeded and interfered with the prison guards. We are satisfied that the prison disciplinary hearing officer made a considered decision and properly concluded that this was a reasonable and necessary sanction.

---

**1.** *See* Act of June 25, 1948, P.L. 772, ch. 645, 62 Stat. 853, codified as amended at 18 U.S.C. §§ 4161–4166 (repealed 1987). These sections were repealed by the Sentencing Reform Act of 1984, P.L. 98–473, Title II, ch. II, § 218(a)(4), Oct. 12, 1984, 98 Stat. 2027. Contrary to these repealed provisions which permitted good time credits to be forfeited, 18 U.S.C. § 3624(b) currently authorizes certain good time credits for prisoners which, once vested, cannot be taken away. Thus, the precise issue presented here will not occur again.

In considering what is necessary and proper to preserve institutional order and discipline, and to encourage good conduct, we defer to the judgment of the prison authorities. As the Supreme Court instructed, the adoption and execution of policies and practices necessary to preserve internal order and discipline, and to maintain institutional security in the prison are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response[,] courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (internal quotation marks and citations omitted). *See also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349–50, 107 S.Ct. 2400, 2404–05, 96 L.Ed.2d 282 (1987) ("evaluation of penological objectives is committed to the considered judgment of prison administrators," whose decisions are "judged under a 'reasonableness' test less restrictive than that ordinarily applied" in order to "avoid[] unnecessary intrusion of the judiciary into problems particularly ill suited to 'resolution by decree'").

Nor do we find *United States v. Dixon,* — U.S. —, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), holding that *criminal* contempt sanctions enforced through nonsummary proceedings bar subsequent criminal prosecution under substantive criminal law, of help to the defendants. Most important, in *Dixon* the defendant was first punished for *criminal* contempt which, when enforced through nonsummary proceedings, is a "crime in the ordinary sense," *id.* at —, 113 S.Ct. at 2856, before the government attempted to prosecute him again under the substantive criminal law. The case does not address the issue presented here of whether *civil* prison disciplinary sanctions would prohibit subsequent criminal prosecution. Accordingly, *Dixon* has no application in this case.

We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline. Were we to accept the defendants' argument, we would hamper the ability of the prison authorities to administer the prisons. If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

In summary, as a general rule a prison disciplinary sanction does not bar subsequent criminal prosecution. The disciplinary sanctions imposed in this case are not so grossly disproportionate to the remedial goal of maintaining order and discipline in the prison so as to constitute a punishment within the meaning of the Double Jeopardy Clause as interpreted in *Halper.*

### III.

Barber contends that the district court erred in refusing to declare a mistrial after a hearsay statement of a trial witness was admitted and then stricken from the record. During the trial, a physician's assistant at the prison testified about treating one of the guards injured during the incident. Over the defense's objection, he was permitted to testify that the guard told him that Barber struck him. After some additional questions, the district judge decided to strike the portion of the testimony that identified Barber. The district judge instructed the jury to disregard the reference to Barber and gave a strong curative instruction, which the defense counsel characterized as satisfactory.[2]

---

2. The following colloquy took place:

THE COURT: Ladies and gentlemen of the jury, during the beginning of the doctor's testimony, he was discussing Mr. DeBellis and the examination he did on Mr. DeBellis.

Inadvertently, through the fault of the Court and not through the fault of counsel or either side, I neglected to excise from that report any reference to the cause of Mr. DeBellis' injury. Obviously, that is an issue you're going to have to decide in this case. So that you will eliminate from your mind the statement made by the witness where he said that Officer DeBellis said "I was hit by Inmate Barber."

■ We agree that the statement at issue is hearsay. An incorrect admission of evidence, however, does not automatically mandate a new trial. There must be prejudice that affects a substantial right of the defendant. *See Haygood v. Auto-owners Ins. Co.*, 995 F.2d 1512, 1515–17 (11th Cir. 1993). In reviewing the district court's handling of the evidence that was subsequently stricken from the record, we presume that the jury will follow a curative instruction unless there is an "overwhelming probability," *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987), that the jury will be unable to follow it and a strong likelihood that the effect of the evidence would be "devastating," *id.*, to the defendant. *Id.; United States v. Hill*, 976 F.2d 132, 144 (3d Cir.1992).

■ Barber has not demonstrated that he has satisfied this standard. The curative instruction set out in the margin was clear and effective. Defense counsel also described it as satisfactory. We therefore do not find any "overwhelming probability" that the jury was unable to follow the judge's admonition. Nor do we perceive any "devastating" effect that the testimony had on Barber. The out-of-court declarant in the hearsay statement actually testified at trial to the same effect as the hearsay statement. The hearsay evidence was therefore at most cumulative. Furthermore, the statement is not the type of evidence that has a dramatic or highly prejudicial impact on the defendant.

We therefore reject Barber's argument based on hearsay evidence.

## IV.

■ Newby contends that the district court erred in refusing to give the jury instruction he requested. The charge requested by Newby summarized his defense to the charge of assault on a prison guard involved in the incident. In reviewing the adequacy of any particular jury instruction, we consider the challenged instruction in the context of both the entire charge and the evidence in the case. *See United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985). The defendant "had no right to compel the district court to use the precise charge he requested." *United States v. Paolello*, 951 F.2d 537, 543 (3d Cir.1991). As long as the instruction covered the proper legal principles regarding the defense, "the use of particular language in [the charge] is left to the sound discretion of the trial judge." *United States v. Garrett*, 574 F.2d 778, 783 (3d Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978).

We have reviewed the disputed charge, and are satisfied that the district court's instruction properly informed the jury of the relevant legal criteria. We further observe that even assuming this refusal was error, it was certainly harmless error. The requested charge[3] related only to the alleged assault,

---

For purposes of the doctor and for purposes of his testimony, his testimony is limited to what the symptoms were.

He said, "I was hit on my right side of my face. I only have [a] mild headache."

Please excise from your mind any testimony you may have heard from the doctor's lips about the fact that he—that Officer DeBellis told him he was hit by an individual. That is not proof that Mr. Barber, in fact, hit Mr. DeBellis. It is not to be considered by you as proof that he hit Mr. DeBellis.

All of the other testimony in the case, of course, can be used by you for you to draw that inference or not draw that inference from the testimony.

Okay. Is that satisfactory, gentlemen?

MR. THOMPSON [for the government]: Sure, your Honor.

Thank you.

MR. MC MAHON [for Newby]: Yes, your Honor.

MR. REILLY [for Barber]: Yes, your Honor.

THE COURT: Fine.

Barber App. 49a–50a.

3. Newby requested the following charge:

Mr. Newby's defense in this case is that he did not assault Ms. Gray. I have charged you that in order to find Mr. Newby guilty of assault, you must find he intentionally attempted to inflict bodily injury on Ms. Gray. Mr. Newby argues that any physical injury suffered by Ms. Gray was caused by his involuntary movements occasioned by his being thrown to the ground and his being unable to breathe because he was in a choke hold and his face was in his own vomit.

If you find that Mr. Newby involuntarily or accidently kicked Ms. Gray, or if you find that the government did not prove that Mr. Newby kicked Ms. Gray intentionally, then you must find Mr. Newby not guilty of the charge of assault.

and Newby was not convicted of assault. We find no error in the instruction to the jury.

## V.

■ Both Barber and Newby contend that their loss of good time credits is a mitigating factor not addressed in the Sentencing Guidelines warranting a downward departure, and the district court erred in concluding it did not have power to grant such a departure. This is an issue of interpreting the Sentencing Guidelines for which we exercise plenary review. *See United States v. Inigo,* 925 F.2d 641, 658 (3d Cir.1991).

A sentencing court has the power to depart downward only when it is faced with a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The language indicates that a decision to depart must be based on a mitigating circumstance within the meaning of § 3553(b). We do not believe that a prison disciplinary sanction through loss of good time credits is such a mitigating circumstance.

It is true that loss of good time credits does not appear to have been addressed by the Commission. However, not having been considered by the Commission does not necessarily bring a circumstance within the meaning of the term "mitigating circumstances" under § 3553(b). In addition to not being considered by the Commission, a circumstance must be a *mitigating* one in order to provide a basis for a downward departure. The gravamen of a mitigating circumstance is that it somehow reduces the defendant's guilt or culpability. It is a circumstance that "in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability." Black's Law Dictionary 1002 (6th ed. 1990).

The illustrations given by the Commission as possible bases for a downward departure, such as coercion and duress, U.S.S.G. § 5K2.12, diminished capacity, *id.* § 5K2.13, and voluntary disclosure of offense, *id.*

§ 5K2.16, are all circumstances that closely relate to the culpability of the defendant. Of course these illustrations are not exhaustive, but the Commission's interpretation supports our reading of the term as requiring mitigation of guilt or culpability. Loss of good time credits is not a factor that relates to the defendants' guilt for their conduct; the defendants' being sanctioned administratively does not show that they were morally less culpable of the charged crime. Loss of good time credits is not a basis for a downward departure.

Because of the different purposes that the disciplinary sanctions and criminal sentences are designed to serve, we think that granting a downward departure to compensate for the defendants' loss of good time credits would defeat the very goals of our criminal justice system. The good time credits system encourages a prisoner to observe prison rules and facilitates rehabilitation by allowing him to serve part of the sentence outside the prison.[4] The award of good time credits does not reduce the term of the original sentence. It is "contingent upon a prisoner's continued good behavior and may be forfeited at any time prior to termination of imprisonment and parole." *Hamilton v. United States,* 464 F.Supp. 210, 212 (M.D.Fla.1979). Conversely, depriving a prisoner of his good time credits does not add to the original sentence imposed for the prior offense, but only requires the prisoner to serve a greater portion of the sentence inside the prison. *See DeSimone v. Norton,* 404 F.Supp. 964, 966 (D.Conn.1975). On the other hand, criminal sentences are designed under the Sentencing Reform Act to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

Subjecting the defendants to both disciplinary sanctions and criminal sentences does not constitute double punishment, but actually serves different goals. Awarding the defendants a downward departure because of the prison disciplinary sanctions would de-

Newby App. 34a.

4. *See supra* note 1.

tract from the goals that the Sentencing Reform Act was designed to achieve. Such a departure would give the defendants a lesser sentence than their respective crimes justly deserve.

In summary, loss of good time credits is not a mitigating circumstance under 18 U.S.C. § 3553(b). Granting a downward departure based on loss of good time will defeat the goals of our criminal justice system. Therefore, we hold that prison disciplinary sanctions through loss of good time credit do not constitute a proper basis for a downward departure.[5]

## VI.

Newby contends that the district court's decision to sentence him to the top of the guideline range was based on the fact that his co-defendant Barber received a longer sentence, and that considering this fact violated the law. This argument fails.

Newby has the burden of proving that the district court relied upon an improper factor in sentencing him, *see United States v. Spiropoulos,* 976 F.2d 155, 163 (3rd Cir.1992), and he has not met this burden. It is not clear to us that in sentencing Newby, the district court actually relied on the fact that Barber received a longer sentence.

Newby points only to a statement made by the district judge in which he noted the disparity of the offense levels that Newby and Barber must receive under the Guidelines. The district judge stated: "I think there is a divergence between the guideline's impact on these two defendants principally because of the criminal history part of it, where Mr. Barber yesterday was a 6 and Mr. Newby today is a 5. That creates a difference." Newby App. at 94a–95a. As is clear from this language, the disparity resulted from the defendants' different criminal histories. The district judge made these state-

ments in the context of determining the offense level for Newby, rather than when selecting a sentence within the guideline range. *See id.* Choosing an offense level is different from selecting a sentence within the guideline range.

It is apparent that the district judge made those statements to the benefit of Newby by expressing that he had no choice but to give Newby a lower offense level. In his opinion, the district judge stated, he "must apply [the Guidelines] as they are given to [him] by the Congress and the Commission in their wisdom." *Id.* at 95a. In so doing, the district judge rejected the government's argument that the court should add three levels for the alleged assault on which Newby was acquitted, and other assaults for which he was not charged. *Id.* One may see in the statement cited by Newby some elements of the district judge's sympathy for Barber, but that does not mean that he imposed a higher sentence within the guideline range on Newby in order to correct the disparities. Fairly read, the statement does not reflect that the district court relied on the substantial sentence for Barber in selecting a harsher sentence within the guideline range for Newby.

In all events, there is no law precluding a district court from considering the codefendant's sentence when selecting a sentence within the guideline range. The Guidelines state that "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Thus, the Guidelines authorize a sentencing court when sentencing a defendant within the guideline range to consider the defendant's character and conduct. This authority is not, however, a limitation on the court's power to consider other factors if appropriate. More important, Congress directed the sentencing court

**5.** We note that the Court of Appeals for the Eighth Circuit has held that the district court has the authority to grant a downward departure based on loss of good time. *United States v. Whitehorse,* 909 F.2d 316, 320 (8th Cir.1990). The sole reason articulated is that there is no provision, policy statement or commentary in the Sentencing Guidelines that addresses the issue of administrative loss of accumulated good time by

prisoners who commit crimes while incarcerated. *Id.* This appears to state only that it is a circumstance that has not been considered by the Commission. *Whitehorse* does not address whether the loss of good time mitigates the culpability of the defendant. We believe the analysis of *Whitehorse* is incomplete and will not follow its holding.

to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). One court of appeals has interpreted this direction as authorizing a sentencing court to consider, in selecting the point within the range to sentence a defendant, the anticipated sentence to be given to a co-defendant for similar conduct. *See United States v. Stanton,* 975 F.2d 479, 481–82 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993).

We have previously held that disparity of sentences imposed on co-defendants is not a proper basis for a downward departure. *United States v. Higgins,* 967 F.2d 841, 845 (3d Cir.1992). Newby asks us to extend *Higgins* in the context of selecting a particular sentence *within* a guideline range. He argues that if the disparity of sentences cannot be considered in determining whether to depart from the guideline range, the same reasoning should also bar a sentencing court from considering a co-defendant's sentence in determining where to sentence him *within* a guideline range.

■ We decline this invitation. As discussed above, Congress appears to have allowed a district judge to consider the anticipated sentence for a co-defendant in selecting a sentence for a particular defendant. Moreover, there is a difference between granting a departure and selecting a sentence within a guideline range. The factors that provide a basis for a downward departure need not be the same as those that provide a basis for selecting a sentence within a guideline. The Guidelines recognize this difference. The Commission states that certain factors, though ordinarily not relevant to the determination of whether a departure is warranted, may be appropriate to the determination of the sentence within the applicable guideline range or to the determination of various incidents of an appropriate sentence such as the conditions of probation or supervised release. *See* U.S.S.G. Ch. 5, Pt. H, intro. comm. When selecting a sentence within a guideline range, a sentencing judge has a variety of choices and discretion as long as he imposes the minimum sentence as

required by the applicable guideline range. *See id.* § 5C1.1 and comm.

Accordingly, we reject Newby's argument that the district court improperly relied upon the fact that his co-defendant Barber received a longer imprisonment term to select the top of the guideline range sentence for him.

## VII.

For the foregoing reasons, we will affirm in all respects the district court's judgments of conviction and the sentences imposed on Newby and Barber.

## SUR PETITION FOR REHEARING

Dec. 29, 1993.

Before: SLOVITER, Chief Judge; BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ROTH, and LEWIS, Circuit Judges.

The petition for rehearing filed by appellant Gene Francis Newby having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Judge Becker and Judge Stapleton would have granted rehearing in banc.