**David R. JOLIVET, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 2:07–CV–399, 2:07–CV–386.**

United States District Court, D. Utah, Central Division.

Oct. 16, 2007.

David R. Jolivet, Pro se.

Richard D. McKelvie, U.S. Attorney's Office, Salt lake City, UT, for Respondent.

## ORDER

J. THOMAS GREENE, District Judge.

### BACKGROUND

Petitioner filed in this court a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. The U.S. Government has responded to Petitioner's motion, and Petitioner has filed his Reply to the Government's Response.

Petitioner argues that he is entitled to a reduction in his prison sentence which is being served in a Canadian prison, because he is being denied credit for good behavior for time he served in American prisons.

After review of the written submissions of the parties, as well as all files and records in this case, this Court denies Petitioner's motion because this court lacks jurisdiction.

### FACTUAL BACKGROUND

Petitioner was serving a life sentence imposed by a state court Judge in 1985, to be served in an American prison. Thereafter, he was convicted by a jury for threatening a federal judicial officer and then pleaded guilty to attempted escape by a federal prisoner. On January 12, 1995, he was sentenced to 36 months to be followed by 41 months imprisonment to run consecutively to one another and to the Utah state sentence. Petitioner continued to serve his sentence in American prisons. Later, however, Petitioner requested that he be incarcerated in Canada due to his residency and citizenship in Canada. Petitioner's request was granted by this court, and he was transferred to Canada and since then he has been serving time as a Canadian citizen in Canadian prisons pursuant to a Transfer Treaty between the USA and Canada.[1]

In the case of Petitioner Jolivet, at the time of transfer of jurisdiction to Canada he had been given no (zero) credit for good conduct time by the U.S. Bureau of Prisons (BOP). If he had become eligible by showing "exemplary compliance," by his computation, he would have received credit for 301 days (petitioner's exhibits 6 and 7). The applicable Statute, which is *permissive,* and not mandatory, provides that a

---

1. 30 U.S.T. 6263. See FN2 *infra.*

prisoner *may* receive so called good behavior credit

"... of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations ... if the *Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence* ... Credit that has not been earned may not later be granted."

18 U.S.C. 3624(B)(1) (Emphasis added).

The U.S. Bureau of Prisons determined that Petitioner "shall receive no credit for good time while serving time in America."

### ANALYSIS

■ Petitioner submits that he is being denied federal due process rights relating to good time credit allegedly accrued while he was serving a sentence in an American prison prior to his transfer to Canada. Such good time credit may be granted to eligible inmates serving time in federal prisons within the U.S.A., but it is not given unless the Bureau of Prisons finds it to be appropriate and warranted.

■ As a matter of jurisdiction, Canadian law applies concerning credit given or not given for good behavior in Canadian prisons. Concerning credit for good behavior previously granted by the BOP for good behavior in serving time in American prisons, that good time credit may be recognized and adopted by Canada as the Transferee State based upon the BOP's determination that an offender is entitled to such credit. In the case of Petitioner, no credit for "good behavior" was granted by the BOP. The applicable statute provides:

"The Sending State shall furnish to the Receiving State a statement showing the offense of which the Offender was convicted, the termination date of the sentence, the length of time already served by the prisoner and *any credits to which the Offender is entitled on account of* work done, *good behavior* or pretrial confinement."

30 U.S.T. 6263, Section 8. (Emphasis added).

The Receiving State has control and jurisdiction of the manner in which a prisoner's sentence is carried out:

"Except as otherwise provided in this Treaty, the completion of a transferred Offender's sentence shall be carried out *according to the laws and procedures of the Receiving State, including the application of any provisions for reduction of the term of confinement by parole, conditional release or otherwise.*"

30 U.S.T. 6263, Article IV, Section 1. (Emphasis added).

In *Kass v. Reno*, 83 F.3d 1186 (10th Cir.1996), the Tenth Circuit addressed a similar issue to the one encountered in this case. In *Kass*, the petitioner was convicted in Mexico, and requested that he serve his sentence in the United States, which was granted. After commencement of his sentence in the United States, the petitioner sought good time credit to be applied to his sentence because he would have been eligible for such credit in Mexico. The Court held that the petitioner "forfeited the potential benefit he might have received under the law of ... Mexico, when he chose to transfer to the United States." *Id.* at 1192.

The court in *Kass* agreed with a federal trial court's ruling in *Hamilton v. United States*, 464 F.Supp. 210, (M.D.Fla.1979). In *Hamilton*, the petitioner was a Canadian citizen who was sentenced in the United States for a crime committed in the United

States. This was the same situation defendant Jolivet was in. In both cases the petitioner requested that he be transferred to serve his sentence in Canada, under the Canadian–American Transfer Treaty.[2]

In *Hamilton*, as well as the case at bar, after commencement of his sentence in Canada, the petitioner filed a § 2255 Motion to Vacate and Correct his sentence imposed in an American federal District Court, seeking good-time credit for time served in American prisons. The Court ruled in *Hamilton*, that where the petitioner alleged only that the manner of execution—not the conviction itself—was improper, the claim should be denied and that it fell under Article IV, § 1 of the Transfer Treaty. As noted supra, that Article provides in relevant part:

> "Except as otherwise provided in this Treaty, *the completion* of a transferred Offender's sentence shall be carried out *according to the laws and procedures of the Receiving State*, including the application of *any provisions for reduction* of the term of confinement by parole, conditional release *or otherwise* . . ." 30 U.S.T. 6263. (Emphasis added).

The *Hamilton* Court further ruled, in deference to judicial comity, that "Canadian courts are the proper courts to supervise Canadian prisoners," and in substance ruled that realistically and constitutionally, a federal court in America should not presume to render rulings which would require Canadian penal authorities to follow and apply American law concerning possible credit for good behavior where such was not granted by the BOP to the inmate in question. *Id.* at 213. This court agrees.

Petitioner's case before this court is virtually identical to the case of the petitioner in *Hamilton*, except that no "good time" credit was awarded to Jolivet by the American Bureau of Prisons prior to his transfer to Canada. Jolivet requested that he be transferred to Canada to serve his sentence there. Pursuant to the Transfer Treaty, Petitioner's request was granted, Canada accepted him as an inmate, and Jolivet submitted himself to the jurisdiction of Canada as the Receiving State. As the Receiving State, jurisdiction lies with Canada, which includes the authority to grant or deny requests for reductions or credits to prison sentences being served in that country.

Petitioner's claim is governed by 28 U.S.C. 2255. That statute requires that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Petitioner claims none of the aforesaid, but solely that the Canadian prison authorities, in calculating petitioner's release date, did not credit him with "statutory good time" for periods of time served in American prisons.

Petitioner became subjected to the authority of the Canada Correctional Service when he entered into the agreement, pursuant to the Transfer treaty, to transfer his custody to Canada, the country of his citizenship. Petitioner does not challenge the legality of his sentence or conviction, but only the manner in which the Canadian authorities carry it out.

Based on the foregoing, this court rules that the United States does not have jurisdiction relative to reductions that may or may not be granted in the carrying out of

---

**2.** Treaty Between the United States of America and Canada on the Execution of Penal Sentences, US–Can, March 2, 1977, 30 U.S.T. 6263. The said Transfer Treaty Between the United States and Canada permits upon request, if granted, convicted defendants to be transferred to the country of their citizenship.

Petitioner's sentence in Canada. Applications for reduction of the term of confinement of such sentences, and the manner of execution thereof, are within the jurisdiction of Canada as the Receiving State. Accordingly, under the Transfer Treaty and otherwise Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED.[3]

IT IS SO ORDERED.

---

**3.** Additional arguments for good-time credit, as well as arguments concerning other matters, are not addressed or determined by the Court in view of its ruling that it lacks jurisdiction over such claims.