**Daniel J. GARRITY, Petitioner–Appellant,**

v.

**Patrick FIEDLER, Respondent–Appellee.**

No. 94–2450.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 4, 1994.

Decided Dec. 2, 1994.

---

Steven P. Weiss (argued), Office of the State Public Defender, Madison, WI, for petitioner-appellant.

Mary V. Bowman (argued), Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for respondent-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, District Judge.[*]

FLAUM, Circuit Judge.

Defendant Daniel J. Garrity filed a writ of habeas corpus alleging that his conviction for solicitation of burglary following the imposition of prison discipline for the same conduct violated the Double Jeopardy Clause. The district court denied his writ and this appeal followed. We affirm.

### I.

Daniel Garrity was incarcerated at the Green Bay Correctional Institution when, on June 14, 1990, prison officials caught him passing a note, which discussed plans for several burglaries, to a visitor. Prison authorities filed a conduct report against Garrity, accusing him of violating institutional regulations. Garrity received a hearing on June 27, 1990, at which time he was found guilty of violating those regulations. Prison officials placed Garrity on adjustment segregation[1] for six days and program segregation[2] for 180 days. This action also extended Garrity's mandatory release date by more than three months, but did not increase his sentence beyond that originally imposed.[3]

Subsequently, the State of Wisconsin charged Garrity with soliciting the commission of a felony in violation of Wis.Stat. § 939.30, a crime arising out of the same conduct which resulted in Garrity's segregation. He pled guilty to this offense and the state trial court judge sentenced Garrity to three years incarceration.

Garrity appealed his sentence to the Wisconsin Court of Appeals, which rejected his claim that the sentence violated the Double Jeopardy Clause. The Wisconsin Supreme Court declined to hear the case. Garrity then brought this writ of habeas corpus in the district court, which also rejected his double jeopardy challenge. *Garrity v. Fiedler*, 850 F.Supp. 777 (E.D.Wis.1994).

### II.

We review a district court's double jeopardy analysis *de novo. United States v. Furlett*, 974 F.2d 839, 842 (7th Cir.1992). The Fifth Amendment's Double Jeopardy

---

[*] The Honorable Stanley J. Roszkowski, of the United States District Court for the Northern District of Illinois, sitting by designation.

1. During adjustment segregation, which can last a maximum of eight days, only one prisoner can be kept per cell, unless prevented by overcrowding. Prisoners can keep only necessities, legal materials and mail received during segregation in their cells and may not leave their cells except for "urgent medical or psychological attention, showers, visits and emergencies endangering their safety in the cell." Wis.Admin.Code DOC § 303.69.

2. Program segregation is similar to adjustment segregation but entails fewer restrictions on the property prisoners may keep in their cells. Prisoners may also leave their cells for exercise, smoke, and have approved items brought to them from the canteen. Wis.Admin.Code DOC § 303.70.

3. Wisconsin law provides that

> each inmate is entitled to mandatory release on parole by the department. The mandatory release date is established at two-thirds of the sentence.... (2)(a) Any inmate who violates any regulation of the prison or neglects to perform required or assigned duties is subject to extension of the mandatory release date as follows: 10 days for the first offense, 20 days for the 2nd offense and 40 days for the 3rd or each subsequent offense. (b) In addition to the sanctions under par. (a), any inmate who is placed in adjustment, program or controlled segregation status shall have his or her mandatory release date extended by a number of days equal to 50% of the number of days spent in segregation status.

Clause[4] protects individuals against three types of violations: prosecuting a defendant again for the same conduct after an acquittal; prosecuting a defendant for the same crime after conviction; and subjecting a defendant to multiple punishments for the same crime. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Garrity argues that Wisconsin committed the third abuse by placing him in segregation, which extended his mandatory release date, and then sentencing him to three additional years in prison for the same behavior.

■ We have previously held that prison discipline does not preclude a subsequent criminal prosecution or punishment for the same acts. *United States v. Shapiro,* 383 F.2d 680, 683 (7th Cir.1967). Every other Circuit that has addressed this issue has agreed. *See, e.g. United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989); *Kerns v. Parratt,* 672 F.2d 690, 691–92 (8th Cir.1982); *Fano v. Meachum,* 520 F.2d 374, 376 n. 1 (1st Cir.1975), *rev'd on other grounds,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *United States v. Herrera,* 504 F.2d 859, 860 (5th Cir.1974); *United States v. Stuckey,* 441 F.2d 1104, 1105–06 (3d Cir.), *cert. denied,* 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971); *United States v. Apker,* 419 F.2d 388 (9th Cir.1969); *Hamrick v. Peyton,* 349 F.2d 370 (4th Cir.1965); *Gibson v. United States,* 161 F.2d 973, 974 (6th Cir.1947); *see also Caudle–El v. Peters,* 727 F.Supp. 1175, 1178 (N.D.Ill.1989); *Gloria v. Miller,* 658 F.Supp. 229, 235 (W.D.Okl.1987); *Sierra v. Lehigh County Pennsylvania,* 617 F.Supp. 427, 430–31 (E.D.Pa.1985).

In addition, the Supreme Court has held that parole revocation does not violate the Double Jeopardy Clause. *United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct.

426, 437–38, 66 L.Ed.2d 328 (1980); *United States v. Dixon,* — U.S. —, ——–—, 113 S.Ct. 2849, 2873–74, 125 L.Ed.2d 556 (White, J., concurring in the judgment in part and dissenting in part) (noting that modification of release conditions or revocation of bail would not present a double jeopardy problem).[5] We and other circuits have specifically held that parole revocation and separate criminal punishment for the same conduct does not violate the Double Jeopardy Clause. *United States v. Hanahan,* 798 F.2d 187, 189 (7th Cir.1986); *Mahn v. Gunter,* 978 F.2d 599, 602 n. 7 (10th Cir.1992); *United States v. Olivares–Martinez,* 767 F.2d 1135 (5th Cir.1985). Wisconsin's mandatory release date closely resembles parole in that both are explicitly conditioned on the maintenance of good behavior. In both cases, "the offender has, by his own actions, triggered the condition that permits the appropriate modification of the terms of confinement." *Ralston v. Robinson,* 454 U.S. 201, 220 n. 14, 102 S.Ct. 233, 245 n. 14, 70 L.Ed.2d 345 (1981). Changes in the conditions of incarceration, such as Garrity's placement in segregation and the extension of his mandatory release date, do not constitute a second punishment for the original offense. *Ralston,* 454 U.S. at 220 n. 14, 102 S.Ct. at 245 n. 14.

Garrity argues that these decisions must be reconsidered in light of *United States v. Halper,* in which the Supreme Court held that a civil penalty counts as punishment for double jeopardy purposes when it "bears no rational relation to the goal of compensating the Government for its losses." 490 U.S. at 449, 109 S.Ct. at 1902. We do not read *Halper,* in which the Supreme Court stated that it announced "a rule for the rare case," *id.,* to mean that the Court intended to alter the established case law cited above. *Cf.*

4. The Fifth Amendment states, in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

5. These Supreme Court cases addressed the issue of whether the revocation of a defendant's parole

constituted a second punishment for his original crime. Here, Garrity argues that his conviction and sentence for the note-passing incident constituted a second punishment for that conduct. We think that it does not matter whether the defendant characterizes the prison discipline as a multiple punishment for his original crime or for his conduct in prison. If the state's action does not constitute punishment, it cannot constitute a *second* punishment for *any* behavior.

*United States v. Newby,* 11 F.3d 1143, 1146 (3d Cir.1993) (holding that *Halper* did not apply because of the order of the proceedings but nonetheless analyzing the petitioner's double jeopardy claim to determine whether his loss of 1,000 days of good time constituted punishment precluding a subsequent criminal prosecution and punishment), *cert. denied,* —— U.S. ——, 114 S.Ct. 1841, 128 L.Ed.2d 468 (1994). Prison administrators must have the ability to discipline a prisoner for violating institutional regulations, and the State must have the ability to prosecute the prisoner for the same conduct at a later date; combining the two proceedings would not be feasible. The prison disciplinary process determines whether the defendant has violated the conditions of his incarceration and is designed to maintain institutional security and order. A criminal prosecution is designed to punish the defendant for a violation of the criminal laws. "Because the two proceedings serve different ends, the finding that the defendant no longer merits [good time] does not foreclose the criminal justice system from punishing the defendant for that conduct." *Hanahan,* 798 F.2d at 189–90.

Historically, we have deferred to the expertise of prison authorities regarding questions of prison administration and discipline. *Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979); *Newby,* 11 F.3d at 1146; *Meriwether v. Faulkner,* 821 F.2d 408, 417 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Lewis v. Lane,* 816 F.2d 1165, 1171 (7th Cir.1987); *Campbell v. Miller,* 787 F.2d 217 (7th Cir.), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986). We cannot conclude that the Court intended its ruling in *Halper* to alter this tradition by subjecting prison disciplinary actions to constitutional scrutiny in every case involving a subsequent criminal prosecution. Nor do we believe that the Court intended to bar those criminal prosecutions. We agree with the district court that "the reasoning and motives behind *Halper* [do not] fit the prison context. This [c]ourt cannot depart from a rule uniformly established by federal and state courts simply because dicta in a Supreme Court opinion dealing with facts and issues wholly unrelated to the present dispute, could be read to require a different result." *Garrity,* 850 F.Supp. at 779.

For the foregoing reasons we affirm the decision of the district court.

AFFIRMED.