**Henry David HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 04–94–00793–CR, 04–94–00794–CR.

Court of Appeals of Texas,
San Antonio.

July 5, 1995.

Rehearing Overruled July 27, 1995.

Mark Stevens, San Antonio, for appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

HARDBERGER, Justice.

Appellant, Henry David Hernandez, was twice indicted for the aggravated assault of a jail guard.[1] Prior to trial appellant filed a written pre-trial application for habeas corpus. The application alleged that appellant had already been punished by prison officials for the assault; he received 15 days administrative detention and was restricted from access to the commissary, newspapers, visitors, telephones, and other programs. A writ was issued by the 187th Judicial District Court of Bexar County, the Honorable Pat Priest presiding. Following an evidentiary hearing, however, the trial court denied relief.

Appellant raises two points of error. The first point of error charges that the Double Jeopardy Clause of the Fourteenth Amendment bars the State from prosecuting him for aggravated assault. Appellant claims that since he was already "punished" by prison officials for the assault, subsequent prosecution would violate the Double Jeopardy Clause. The second point of error argues that Article I, § 14 of the Texas Constitution also bars criminal prosecution.

### DISCUSSION

■ We begin with the Double Jeopardy Clause of the Fifth Amendment, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. It protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 441, 109 S.Ct. 1892,

1897, 104 L.Ed.2d 487, 496 (1989). It is the third of these protections which is at issue here.

Appellant's argument rests on his interpretation of two relatively recent decisions from the United States Supreme Court, *United States v. Halper*, 490 U.S. at 435, 109 S.Ct. at 1892, and *Department of Revenue of Montana v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Halper*, the defendant was convicted on 65 counts of filing false medicare claims. After he was sentenced to two years in prison and fined $5,000, the Government filed a separate civil action under the Federal False Claims Act, 18 U.S.C. § 287, to recover a $2,000 civil penalty for each of the 65 violations. *Id.* at 437, 109 S.Ct. at 1895–96. The district court concluded that the civil penalty for which Halper would be liable, $130,000, violated the Double Jeopardy Clause. *Id.* at 437–39, 109 S.Ct. at 1895–97. The Supreme Court agreed, holding that the disparity between the government's approximated expenses of $16,000 and Halper's liability of $130,000 was sufficiently disproportionate that such a civil penalty constituted a second punishment for double jeopardy purposes. *Id.* at 452, 109 S.Ct. at 1903–04. The Court remanded the case for a determination of the government's actual damages. *Id.*

The Court explained that labels do not control in a double jeopardy analysis. *Id.* at 448, 109 S.Ct. at 1902. Instead, "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109, S.Ct. at 1901. Thus, the Court concluded that "under the Double Jeopardy Clause, a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial, but only

---

1. In cause No. 94–793 appellant was indicted for intentionally causing bodily injury to Roger Ybarra. In cause No. 94–794 the complainant is Terry Payton. Both complainants are guards employed by the Bexar County Adult Detention Center, and both incidents allegedly occurred on September 9, 1991.

as deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1902.

In *Kurth Ranch,* the Kurth family operated a grain and livestock farm in Montana with a sideline business in marijuana production and sales. Montana law enforcement officers raided the farm, arresting the Kurths and confiscating all of the marijuana plants, materials and paraphernalia they found. *Id.* at ——, 114 S.Ct. at 1941–42. After conviction and sentence, Montana imposed a marijuana tax on the Kurths of $896,940.99. The Kurths eventually filed for bankruptcy protection and the Bankruptcy court disallowed the tax, concluding it violated the Double Jeopardy Clause. The Supreme Court agreed, holding that "a tax was not immune from double jeopardy scrutiny simply because it was a tax." *Id.* at ——, 114 S.Ct. at 1946. It then concluded the Montana tax was "a concoction of anomalies, too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at ——, 114 S.Ct. at 1948.

Texas courts have consistently held that disciplinary sanctions imposed by prison officials for crimes committed within the prison do not bar subsequent prosecution for those crimes in a court of competent jurisdiction. *See, e.g., McKinney v. State,* 491 S.W.2d 404, 407–08 (Tex.Crim.App.1973) (assault with intent to murder prison official); *Mott v. State,* 846 S.W.2d 398, 399 (Tex.App.—Houston 14th Dist.] 1992, no pet.) (aggravated assault on prison guard); *Smith v. State,* 827 S.W.2d 71, 72 (Tex.App.—Houston [1st Dist.] 1992, no pet.) (aggravated assault on correctional officer); *Rose v. State,* 807 S.W.2d 626, 630 (Tex.App.—Houston [14th Dist.] 1991, no pet.) (aggravated assault on correctional officer); *Whitten v. State,* 711 S.W.2d 661, 664 (Tex.App.—Tyler 1985, no pet.) (aggravated assault on prison guard).

Federal courts have reached the same result. *See, e.g., Lucero v. Gunter,* 17 F.3d 1347, 1351 (10th Cir.1994) ("Prison disciplinary hearings are not part of criminal prosecution, … and therefore do not implicate double jeopardy concerns."); *United States v. Newby,* 11 F.3d 1143, 1146 (3rd Cir.1993) ("Disciplinary sanctions imposed by prison authorities for infractions prison regulations do not bar a subsequent criminal prosecution"); *United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989) ("It is well established in this Circuit that administrative punishment imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the double jeopardy clause."); *Kerns v. Parratt,* 672 F.2d 690, 691–92 (8th Cir.1982) ("It is well settled that there is no bar to separate criminal prosecution for an offense such as [petitioner's] assault upon his fellow inmate"); *United States v. Williamson,* 469 F.2d 88, 89 (5th Cir.1972) ("Administrative discipline of an escapee does not prohibit criminal prosecution for the escape.") (quoting *Keaveny v. United States,* 405 F.2d 821 (5th Cir.1969)); *Fano v. Meachum,* 520 F.2d 374, 376 n. 1 (1st Cir.1975), *reversed on other grounds,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("We do not share the view that prosecution may not constitutionally be based on conduct which is also the subject of [prison] disciplinary proceedings."). We also note that the Supreme Court has stated, albeit in a different context, that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *see also Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) ("Jeopardy denotes risk" of an "essentially criminal" nature).

Appellant argues that *Kurth Ranch* implicitly overrules these lines of authorities. We reject this argument for several reasons. To begin with, we note that in the year since *Kurth Ranch* was decided not one court, state or federal, according to our research, has cited it for the proposition appellant advances here, *i.e.,* that prison disciplinary sanctions prohibit subsequent criminal prosecution. The same could be said of *Halper,* decided more than five years ago. Indeed, recent decisions addressing this issue continue to hold that disciplinary sanctions imposed by prison officials do not bar subsequent criminal prosecution. *See United States v.*

*Hernandez–Fundora,* 49 F.3d 848, 853 (2nd Cir.1995) ("subsequent prosecutions will be barred only in those exceedingly rare circumstances where the disciplinary sanction imposed is grossly disproportionate to the government's interest in maintaining prison order and discipline"); *Garrity v. Fiedler,* 41 F.3d 1150, 1152 (7th Cir.1994) ("We have previously held that prison discipline does not preclude a subsequent criminal prosecution or punishment for the same acts."); *State v. Walker,* 35 Conn.App. 431, 646 A.2d 209, 212, *cert. denied,* 231 Conn. 916, 648 A.2d 159 (1994) ("We similarly conclude that the sanction imposed on the defendant by the department of correction in this case [for assaulting a prison employee] did not constitute punishment for the purposes of double jeopardy."); *Guerrero v. State,* 893 S.W.2d 260, 261 (Tex.App.—Waco 1995, no pet.) (federal constitution's "prohibition against double jeopardy does not preclude the State from trying an inmate when he has already been punished for the same conduct in administrative proceedings.").

Second, we think appellant has misinterpreted the holding of *Kurth Ranch.* In that case, the primary issue was whether a tax may be characterized as punishment for double jeopardy purposes. —— U.S. at ——, 114 S.Ct. at 1945. Citing *Halper,* the Court noted that "[a] defendant convicted and punished for an offense may not have a non-remedial civil penalty imposed against him for the same offense in a separate proceeding." *Id.* The Court also declared, "Here we ask only whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." *Id.* It is this statement which apparently forms the basis for appellant's argument that under *Kurth Ranch,* the disciplinary sanctions imposed on him were punitive in nature, and therefore constituted punishment for double jeopardy purposes.

In construing *Kurth Ranch,* however, we are also mindful of the Court's statement that "tax statutes serve a purpose quite different from civil penalties, and *Halper's* method of determining whether the exaction was remedial or punitive 'simply does not work in the case of a tax statute.'" *Id.* at

——, 114 S.Ct. at 1948. Moreover, the majority opinion specifically recognized that Montana's tax statute *"does not raise the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character."* *Id.* at ——, 114 S.Ct. at 1947 n. 21 (emphasis added). We therefore consider it highly unlikely the Court even contemplated, much less held, that disciplinary sanctions imposed by prison officials would bar subsequent criminal prosecution. The reasoning and motives behind *Kurth Ranch* simply do not fit the present case, which involves facts and issues wholly unrelated to the dispute in *Kurth Ranch.* Furthermore, it appears *Kurth Ranch* modifies *Halper's* double jeopardy analysis only insofar as tax statutes are concerned; for all other civil penalties, *Halper* apparently remains unchanged. We agree with the federal district court that concluded, albeit under different circumstances, "This Court cannot depart from a rule uniformly established by federal and state courts simply because dicta contained in a Supreme Court opinion, dealing with facts and issues wholly unrelated to the present dispute, could be read to require a different result." *Garrity v. Fiedler,* 850 F.Supp. 777, 779 (E.D.Wis.), *aff'd,* 41 F.3d 1150 (7th Cir.1994) (distinguishing *Halper* ). The issue then becomes, to use *Halper's* proviso, whether the disciplinary sanctions imposed on appellant operated "only as a deterrent or retribution," without any remedial characteristics. *See Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1902; *Garrity,* 850 F.Supp. at 779 (*Halper's* "core holding ... is that a civil sanction, to qualify as punishment, must operate 'only as a deterrent or retribution', without any remedial elements.").

This of course assumes *Halper* applies to this case. An argument could be made that it does not. We note, for example, that the Supreme Court carefully qualified its holding in *Halper.* "What we announce now is a rule for the *rare case such as the one before us,* where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 448, 109 S.Ct. at 1902 (emphasis added). We also

note that this description does not seem to fit the present case, which involves facts and issues far removed from the dispute in *Halper*. *See Garrity*, 850 F.Supp. at 779. Indeed, the issue here is actually the reverse of *Halper*, where the Court was concerned with whether a criminal penalty bars a civil penalty imposed after the criminal penalty. *See Newby*, 11 F.3d at 1145 ("The matter *sub judice* appears to be the reverse of *Halper*...."); *Mott*, 846 S.W.2d at 399 ("*Halper* involved a criminal prosecution followed by a civil lawsuit involving the same conduct. The present case involved administrative disciplinary sanctions followed by a criminal prosecution.").

▇ Assuming, however, that *Halper* applies, it is clear the State has a sound remedial interest "to encourage good conduct and to maintain order in the prison, given that prison is a place where good order and discipline are paramount because of the concentration of convicted criminals." *Newby*, 11 F.3d at 1145. The fact these remedial concerns require "punishing" individuals for violent and disruptive behavior does not mean the sanctions imposed constitute "punishment" for double jeopardy purposes. *Hernandez–Fundora*, 49 F.3d at 852. Whether a given sanction constitutes punishment is not determined from the defendant's perspective, since "even remedial sanctions carry the sting of punishment." *Halper*, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7. (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943)). Moreover, "[p]unitive interests and remedial interests ... are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals." *Hernandez–Fundora*, 49 F.3d at 852. We do not think the disciplinary sanctions imposed in this case were so grossly disproportionate to the remedial goal of maintaining order and discipline in the prison so as to constitute a punishment within the meaning of the Double Jeopardy Clause as interpreted in *Halper*.

▇ Another reason for rejecting appellant's argument is that courts traditionally have deferred to the expertise of prison authorities regarding questions of prison administration and discipline. *Garrity*, 41 F.3d at 1153. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). As the U.S. Seventh Circuit recently observed:

> Prison administrators must have the ability to discipline a prisoner for violating institutional regulations, and the State must have the ability to prosecute the prisoner for the same conduct at a later date; combining the two proceedings would not be feasible. The prison disciplinary process determines whether the defendant has violated the conditions of his incarceration and is designed to maintain institutional security and order. A criminal prosecution is designed to punish the defendant for a violation of the criminal laws. 'Because the two proceedings serve different ends, the finding that the defendant no longer merits [good time] does not foreclose the criminal justice system from punishing the defendant for that conduct.'

*Garrity*, 41 F.3d at 1153 (citation omitted). The Third Circuit has reached a similar conclusion:

> We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline. Were we to accept the defendants' argument, we would hamper the ability of prison authorities to administer the prisons. If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to choose between instituting a disciplinary proceeding and awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

*Newby*, 11 F.3d at 1146. The Supreme Court has also noted that

the problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. 'Such considerations are peculiarly within the province and the professional expertise of corrections officers, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'

*Bell v. Wolfish*, 441 U.S. 520, 548, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (citations omitted); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–50, 107 S.Ct. 2400, 2404–05, 96 L.Ed.2d 282 (1987) ("[E]valuation of penological objectives is committed to the considered judgment of prison administrators," whose decisions are "judged under a 'reasonableness' test less restrictive than that ordinarily applied" in order to avoid "unnecessary intrusion of the judiciary into problems particularly ill suited to 'resolution by decree.'"). We do not think the Supreme Court intended its rulings in *Halper* or *Kurth Ranch* to alter this tradition by subjecting prison disciplinary proceedings to constitutional scrutiny in every case where there is a subsequent criminal prosecution, much less bar those criminal prosecutions. *See Garrity*, 41 F.3d at 1153; *Newby*, 11 F.3d at 1146. The first point is overruled.

As for appellant's state constitutional claim, we first note that the Texas double jeopardy provision [2] has been interpreted by most courts as affording essentially the same type and level of protection as its federal counterpart. *See, e.g., Guerrero*, 893 S.W.2d at 261; *Ex Parte Tomlinson*, 886 S.W.2d 544, 546 (Tex.App.—Austin 1994, no pet.); *Fant v. State*, 881 S.W.2d 830, 832 (Tex.App.—Houston [14th Dist.] 1994, pet. granted); *Gibson v. State*, 875 S.W.2d 5, 7 (Tex.App.—Texarkana 1994, pet. ref'd); *Heyduck v.*

*State*, 814 S.W.2d 156, 157 (Tex.App.—Houston [1st Dist.] 1991, no pet.). Indeed, the Texas Court of Criminal Appeals has observed that "[c]onceptually, the State and Federal double jeopardy provisions are identical." *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990), *cert. denied*, 502 U.S. 929, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991) (citing *Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990)). Moreover, several courts of appeals have ruled since *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim.App.1991), that the State is not precluded under Article I, § 14 of the Texas Constitution from trying an inmate when he has already been punished for the same conduct in a prison disciplinary proceeding. *See, e.g., Guerrero*, 893 S.W.2d at 261; *Mott*, 846 S.W.2d at 398–99; *Quevedo v. State*, 832 S.W.2d 422, 424 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In view of our previous discussion, we similarly hold the Texas Constitution does not preclude the State from trying an inmate even though he has been the subject of disciplinary proceedings in prison for the same conduct. Appellant's second point of error is therefore overruled, and the judgment of the trial court is affirmed.

---

**2.** Article I, § 14 provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put

upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX CONST. art. I § 14.