**Andre PORTER, Plaintiff,**

v.

**Mr. Donald SELSKY and Mr. Acting Captain Walter, Defendants.**

No. 95–CV–598C(F).

United States District Court, W.D. New York.

Aug. 29, 2003.

Hodgson Russ LLP (Patrick J. Long, Esq., of Counsel), Buffalo, NY, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York (Ann C. Williams, Esq., Assistant Attorney General, of Counsel), Buffalo, NY, for Defendants.

CURTIN, District Judge.

Presently before the court is defendants' motion for summary judgment dismissing

the complaint (Item 85), plaintiff's cross-motion seeking to amend the complaint to add an additional defendant (Item 111), and plaintiff's motion for reconsideration of this court's May 7, 1997 decision and order (Item 124). Oral argument of these motions was heard on July 7, 2003. For the reasons that follow, defendants' motion for summary judgment is granted, plaintiff's cross-motion to amend the complaint is denied, and plaintiff's motion for reconsideration is denied.

## BACKGROUND

Plaintiff commenced this action in July 1995, alleging violations of his civil rights. Specifically, he alleged that he was denied due process in the context of a disciplinary hearing, and that he was confined under inhumane conditions at the Wende Correctional Facility ("Wende") maintained by the New York State Department of Correctional Services ("DOCS"), in violation of the Eighth Amendment. In its May 7, 1997 decision, the court granted defendants' motion for partial summary judgment, dismissing the due process claims against all defendants and the Eighth Amendment claims as against defendants Thomas A. Coughlin, III, Frank E. Irvin and John P. Keane. The court denied the motion with respect to the Eighth Amendment claims against defendants Donald Selsky and Acting Captain Walter (Item 34). *Porter v. Coughlin*, 964 F.Supp. 97 (W.D.N.Y.1997).

In March 1998, in response to the defendants' request for a more definite statement, plaintiff filed an amended complaint, in which he alleged that defendants Selsky and Walter conspired to place him in a cruel and unusual environment by assigning him to a cell in Wende's Special Housing Unit ("SHU") in close proximity to feces-throwing inmates (Item 50). In August 1998, defendants moved for summary judgment (Item 56). In an order dated March 26, 1999, the court denied the motion with leave to renew, and ordered the parties to complete discovery (Item 65). Discovery proceeded, and in January 2000 the court granted plaintiff's motion for assignment of counsel (Item 76).

In January 2001, defendants again moved for summary judgment (Item 85). On May 15, 2001, after two substitutions of counsel, plaintiff filed a cross-motion for an order staying consideration of the motion for summary judgment and allowing additional discovery, including the depositions of defendant Selsky and Rickey Branning, a former Deputy Superintendent at Wende (now retired) (Item 96). The court granted plaintiff's cross-motion on January 31, 2002 (Item 101). The requested discovery was produced, and depositions were conducted in August and September 2002. At a meeting with counsel on October 9, 2002, the parties informed the court that discovery was complete, and the defendants renewed their motion for summary judgment (Item 108).

Plaintiff subsequently sought and was granted an extension of time, until January 10, 2003, to respond to the defendants' motion for summary judgment. On January 10, 2003, without responding to the motion for summary judgment, plaintiff filed a cross-motion to amend the complaint to add Rickey Branning as a defendant (Item 110). Defendants then filed a memorandum of law in opposition to the plaintiff's cross-motion and in further support of their motion for summary judgment (Item 116). In an order dated April 21, 2003, the court directed plaintiff to file a response to the motion for summary judgment by May 6, 2003 (Item 117). The plaintiff's response was filed May 7, 2003 (Items 118, 119).

Meanwhile, in a letter dated May 6, 2003, plaintiff's counsel sought the court's

184

permission to file a motion for reconsideration of plaintiff's double jeopardy cause of action, which was dismissed as a result of the May 7, 1997 decision. The court granted permission, and the motion was filed on May 30, 2003 (Item 124). Defendants responded (Item 127), and oral argument of all pending motions was heard on July 7, 2003. For the reasons that follow, defendants' motion for summary judgment is granted, plaintiff's motions to amend and for reconsideration are denied, and the complaint is dismissed.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a motion for summary judgment is made, the adverse party may not rest upon the mere allegations in his pleadings. The response "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■■■ In his remaining causes of action, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, plaintiff alleges that defendants Selsky and Walter conspired to place him in the SHU in close proximity to feces-throwing inmates in violation of the Eighth Amendment prohibition against cruel and unusual punishment. As an initial matter, the doctrine of *respondeat superior* does not apply to § 1983 actions. *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y.1995). Thus, a state employee cannot be held liable under 42 U.S.C.

§ 1983 absent a showing that he was personally involved in the violation of the plaintiff's constitutional rights. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Id.* (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

In support of their motion for summary judgment, defendants Selsky and Walter have submitted evidence showing that neither of them had the authority or responsibility for plaintiff's cell placement, and neither defendant had any role in plaintiff's cell assignment or movements while he was housed in the SHU at Wende. Defendant Selsky, in his Declaration, stated that he has been DOCS' Director of Special Housing and Inmate Discipline since 1988 (Item 88, ¶ 1). In that capacity, he is responsible for general oversight of the inmate disciplinary system and the operation of the SHUs at the various correctional facilities statewide, and for responding to inmate appeals of disciplinary decisions (*id.* at ¶ 3). He has no authority to direct the cell assignment of an inmate within an SHU at a particular facility (*id.* at ¶ 5). Furthermore, he never directed or participated in any decision regarding the cell assignment or movement of plaintiff, or

any other inmate at Wende (*id.* at ¶ 6). Likewise, he never discussed, conferred, or otherwise entered into an agreement with defendant Walter or any other person regarding the cell assignment or movement of plaintiff, or any other inmate at Wende, to a particular cell in the SHU (*id.* at ¶ 7).

Defendant Walter, in his Declaration, stated that he is designated as an "Acting Captain" when he acts as a hearing officer in inmate disciplinary proceedings (Item 90, ¶ 2). Appended to his Declaration are Watch Commander log sheets from those days in 1993 and 1994 when defendant Walter was the Watch Commander (*id.*, Exh. A). Defendant Walter states, and the log sheets confirm, that he was not the Watch Commander on any day that plaintiff was moved from one cell to another in the SHU at Wende (*id.* at ¶ 14). He states that he never directed or otherwise participated in any decision regarding plaintiff's cell assignment or movement in the SHU (*id.* at ¶ 17). Additionally, he never discussed, conferred, or entered into an agreement with defendant Selsky or any other person regarding plaintiff's cell assignment or movement in the SHU at Wende (*id.* at ¶ 18).

In his Declaration, Jeffrey Skinner, Deputy Superintendent of Security at Wende, stated that he is responsible for authorizing and/or approving inmate cell assignments and movement (Item 89, ¶ 1). In case of an emergency, a "Watch Commander" can direct an inmate cell movement, which must be authorized by the Deputy Superintendent of Security by the end of the day (*id.* at ¶ 6). Mr. Skinner stated that defendant Walter, when designated as an "Acting Captain," had no authority to authorize or approve inmate cell placement or movement (*id.* at ¶ 7). Additionally, Skinner stated that defendant Selsky does not participate in any decision

regarding cell assignment or movement at Wende (*id.* at ¶ 8).

In opposition to defendants' summary judgment motion, plaintiff argues that his confinement in the Wende SHU under inhumane and barbarous conditions, which included the throwing of feces, setting of fires, and flooding of cells by neighboring inmates, amounted to cruel and unusual punishment prohibited by the Eighth Amendment. In this regard, the courts have long recognized that the Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be protected from the assaultive conduct of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer*, the Court set forth a two-part standard for determining whether this right has been violated, as follows:

> First, the deprivation alleged must be, objectively, sufficiently serious. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety . . . .

*Id.* at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted).

■ The Court explained that prison officials who actually knew of a substantial risk to inmate health or safety may successfully defend a claim of deliberate indifference if they can demonstrate that they responded reasonably to the risk, even if

the harm ultimately was not averted. *Id.* at 844, 114 S.Ct. 1970. As stated by the Court:

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Id.* at 844–45, 114 S.Ct. 1970 (citations omitted). Thus, a prison official may be held liable under the Eighth Amendment for failing to protect inmates from harm "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847, 114 S.Ct. 1970; *see also Hamilton v. Poole,* 1997 WL 626406, at *2–3 (W.D.N.Y. Sept. 22, 1997).

■ In this case, plaintiff contends that the risks to his health and safety in the Wende SHU were so obvious that defendants Walter and Selsky, as part of the general chain of command, were aware of those risks and were deliberately indifferent to them. Plaintiff has summarized the log books from the SHU at Wende. The log book entries reveal that the SHU is indeed an extremely unpleasant place, where feces-throwing, spitting, urinating, overflowing toilets, and fires set by inmates are regular occurrences. However, the log entries also show that Wende officials spend a great deal of time addressing these acts, cleaning and disinfecting cells, moving inmates behind plexiglass shields, and punishing the violators. In fact, in the only feces-throwing incident in which plaintiff was involved during the time period relevant to the complaint in this case, the offending inmate (Franco) was immediately moved to a cell behind a plexiglass shield (Item 90, ¶ 8; Item 119, ¶¶ 10–11), and defendant Walter conducted separate disciplinary hearings for plaintiff and inmate Franco (Item 90, ¶ 9).

The log entries as a whole do not indicate that plaintiff was particularly victimized by other SHU inmates committing unhygienic or unsafe acts, or that defendants deliberately disregarded substantial risks to plaintiff's health and safety, but rather that such acts were primarily directed at Corrections Officers, or at the SHU population in general (as in the case of toilet-flooding or fires), and that responsible prison officials took reasonable measures to abate the risks. Under these circumstances, it cannot be said that plaintiff was deprived of life's basic necessities while in the SHU simply because he was housed in proximity to feces-throwing inmates. In fact, the court's review of the extensive record indicates that every inmate housed in the SHU was subjected to unpleasant conditions at the hands of other inmates, and that defendants were regularly required to and did address the unhygienic acts.

Based on this analysis, plaintiff has failed to meet his burden of setting forth specific facts showing that his confinement in the Wende SHU under these conditions posed a substantial risk of serious harm as to which defendants were deliberately indifferent. Accordingly, no reasonable jury could find in favor of plaintiff on his Eighth Amendment claim, and defendants are entitled to summary judgment dismissing this claim as a matter of law.

■ Plaintiff fares no better on his conspiracy claims. In order to state a claim for conspiracy under § 1983, plaintiff must show that the defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds that

violated the plaintiff's federal constitutional or statutory rights, privileges, or immunities. *D'Andrea v. Hulton,* 81 F.Supp.2d 440, 445 (W.D.N.Y.1999); *Katz v. Morgenthau,* 709 F.Supp. 1219, 1231 (S.D.N.Y. 1989), *aff'd in relevant part,* 892 F.2d 20 (2d Cir.1989). In other words, plaintiff must demonstrate that defendants Selsky and Walter "agreed" or "reached an understanding" to violate his constitutional rights. *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992).

There is no evidence in the extensive record to show or suggest that any such agreement existed between defendants Selsky and Walter, or any other prison officials. Accordingly, plaintiff has failed to meet his burden on this motion to come forward with proof that the defendants reached an agreement or understanding to willfully violate his constitutional rights by placing plaintiff in proximity to feces-throwing inmates.

To state a conspiracy claim under 42 U.S.C. § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). Conclusory allegations of conspiracy are not sufficient to state a claim under § 1985. *Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 185 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). Accordingly, in the absence of any showing— or even any allegations—of racial or other invidious discriminatory animus on the part of defendants Selsky and Walter, plaintiff's § 1985 conspiracy claim must be dismissed. Because § 1985 liability is a predicate to liability under 42 U.S.C.

§ 1986, plaintiff's § 1986 claim is also dismissed. *See* 42 U.S.C. § 1986; *Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000), *cert. denied,* 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001); *Rivera v. Goord,* 119 F.Supp.2d 327, 346 (S.D.N.Y. 2000).

On the basis of the foregoing, I find that plaintiff has failed to raise a genuine issue of material fact for trial on any of the claims set forth in his complaint. Accordingly, defendant is entitled to summary judgment dismissing the complaint as a matter of law.

## II. Plaintiff's Cross Motion to Amend the Complaint

In lieu of a response to the motion for summary judgment, plaintiff filed a cross-motion to amend the complaint to name Rickey Branning, retired Deputy Superintendent of Security at Wende, as an additional defendant. In his Declaration in support of the cross-motion to amend the complaint, plaintiff's counsel states:

> The fundamental allegation of plaintiff's remaining causes of action is that he was moved without justification to be housed next to inmates known to commit unhygienic acts by defendants Selsky and Walter. Defendants themselves concede that the individual with the authority and the responsibility to approve any cell movement of plaintiff was Deputy Superintendent of Security Branning.

(Item 113, Long Decl., ¶ 17). Further, plaintiff's counsel states that "any cell movement of plaintiff in the Special Housing Unit was approved and condoned" by Branning (*id.,* ¶ 19). In his deposition of September 24, 2002, Branning stated that he had general oversight responsibility for inmate cell movement in the SHU at Wende (Item 11, Exh. B, pp. 9–10).

Generally, the grant of leave to amend the pleadings is within the discretion of the trial court, and it shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a); *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Nerney v. Valente & Sons Repair Shop,* 66 F.3d 25, 28 (2d Cir.1995). Valid reasons for denying leave to amend include delay, undue prejudice to the opposing party, bad faith or dilatory motive on the part of the movant, and futility of the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Plaintiff's motion to amend is denied on several grounds. First, this case has been pending since 1995, and plaintiff was aware in 1999 (when defendants responded to plaintiff's interrogatories) that neither Selsky nor Walter had any role in plaintiff's cell assignment or movement in the SHU. Additionally, at the time of Walter's deposition in September 2000, plaintiff was aware that internal cell movement was approved by either the Superintendent or the Deputy Superintendent of Security. In the meeting on October 9, 2002, plaintiff's current counsel (his third) announced that discovery was completed, and defendants renewed their motion for summary judgment. Plaintiff's counsel never stated his intention to amend the complaint until January 10, 2003, when he filed this motion on the day that his response to the summary judgment motion was due. Under these circumstances, it is not difficult to conclude that plaintiff inexplicably delayed his application to add Branning as a defendant, and granting leave to do so now would cause undue prejudice to defendants.

Additionally, as defendants point out, the proposed amended complaint contains no specific allegations against Branning. Plaintiff alleges only generally that the defendants conspired to deprive plaintiff of his constitutional rights, and the claims against Branning are based solely on his supervisory status. As discussed above, this is insufficient to state a claim for supervisory liability under § 1983. *Colon,* 58 F.3d at 873.

Moreover, as the above analysis amply demonstrates, any attempt to state a claim that Rickey Branning violated plaintiff's Eighth Amendment rights, or that he conspired with any other prison official to do so, would be futile. Simply put, the extensive record before the court, developed as the result of eight years of litigation, demonstrates that the conditions of plaintiff's confinement in the Wende SHU did not pose a substantial risk of serious harm as to which defendants were deliberately indifferent.

Accordingly, plaintiff's motion for leave to amend the complaint is denied.

### III. Plaintiff's Motion for Reconsideration

Finally, plaintiff seeks to have the court reconsider its May 1997 decision in which the court dismissed plaintiff's claim that he was denied due process at his April 14, 1993 disciplinary hearing. As explained in that decision, the April 14, 1993 hearing pertained to a misbehavior report charging plaintiff with a violation of DOCS Rule 1.00 (Penal Law Offense)[1] for his involvement in an inmate disturbance which took

---

1. Rule 1.00 provides:
   Any Penal Law offense may be referred to law enforcement agencies for prosecution through the courts. In addition, depart- mental sanctions may be imposed based upon a criminal conviction.
   7 N.Y.C.R.R. § 270.2(A).

place in May 1991 at the Southport Correctional Facility. Plaintiff was convicted in December 1992 in Chemung County Court on a charge of promoting prison contraband (New York Penal Law § 205.25) in connection with the May 1991 incident at Southport, and was sentenced to an additional prison term of 3–to–6 years to be served consecutive to his underlying sentence of 4 to 12 years for robbery. *See People v. Porter,* 220 A.D.2d 884, 632 N.Y.S.2d 336 (3rd Dep't 1995), *appeal denied,* 87 N.Y.2d 1023, 644 N.Y.S.2d 157, 666 N.E.2d 1071 (1996). Plaintiff was found guilty at the April 14, 1993 disciplinary hearing, and received a penalty of five years in the SHU, later reduced on appeal to three years. *Porter,* 964 F.Supp. at 100.

In ruling on plaintiff's due process claim, this court stated:

> The purpose of the April 14 hearing was to determine whether plaintiff had already been found guilty in state court of promoting prison contraband in the first degree [under Penal Law 205.25], and if so, to assign an appropriate penalty for this violation. Thus, all the hearing officer had to do to find a prison rule violation in this case was to ascertain whether plaintiff had been actually convicted in state court. The hearing was not an opportunity for plaintiff to reargue the merits of the underlying charge. The prison officials had the opportunity to impose their own penalty on plaintiff for his involvement in the Southport riot without implicating double jeopardy.

*Porter,* 964 F.Supp. at 103 n. 1 (citing *Bolanos v. Coughlin,* 1993 WL 762112, at *13 (S.D.N.Y. Oct. 15, 1993)).

Plaintiff, relying on *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), now argues that there has been a change in the law of double jeopardy, and that he should be allowed to reargue this claim because he was not represented by counsel when the court issued the decision in May 1997. Defendants contend that plaintiff has not brought this motion within a reasonable time in violation of Fed.R.Civ.P. 60(b), and that *Hudson* does not require a different result in any event. Because I agree that the holding in the *Hudson* case has not "call[ed] into serious question the correctness of the court's judgment ..." with respect to whether the protections of the Fifth Amendment's double jeopardy clause attach to prison disciplinary proceedings, *Sargent v. Columbia Forest Prod., Inc.,* 75 F.3d 86, 90 (2d Cir.1996), *quoted in Figueroa v. Fischer,* 2003 WL 1701997, at *7 (S.D.N.Y. March 31, 2003), I find it unnecessary to address defendant's timeliness argument.

In *Hudson,* the Supreme Court held that the double jeopardy clause did not bar the criminal prosecution of bank officials arising out of the same lending transactions that formed the basis for administrative penalties previously imposed by the federal Office of the Comptroller of the Currency ("OCC"), because the prior OCC proceedings were civil, not criminal, in nature. *Hudson,* 522 U.S. at 95–96, 118 S.Ct. 488. In reaching this result, the Court articulated the following factors to guide the determination as to whether a particular punishment invokes double jeopardy: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter;* (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive

in relation to the alternative purpose assigned. *Id.* at 99–100, 118 S.Ct. 488 (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

In *United States v. Mayes,* 158 F.3d 1215 (11th Cir.1998), *cert. denied,* 525 U.S. 1185, 119 S.Ct. 1130, 143 L.Ed.2d 123 (1999), a case on point, the Eleventh Circuit Court of Appeals applied the *Hudson* factors and concluded that disciplinary sanctions imposed on several inmates for various violations of institutional rules and regulations in connection with a prison riot at the Federal Correctional Institution at Talladega, Alabama, did not bar subsequent criminal prosecutions for the same conduct. The court first discussed the general rule, longstanding in the majority of the federal circuits, that prison disciplinary sanctions do not bar subsequent criminal prosecutions on double jeopardy grounds. *Id.* at 1220 (citing *Garrity v. Fiedler,* 41 F.3d 1150, 1152 (7th Cir.1994) (collecting cases), *cert. denied,* 514 U.S. 1044, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995)). The Eleventh Circuit noted that although the Supreme Court's decision in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), altered the analysis somewhat, every circuit court decision to address the issue subsequent to *Halper,* including the Second Circuit's decision in *United States v. Hernandez–Fundora,* 58 F.3d 802 (2d Cir.), *cert. denied,* 515 U.S. 1127, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995), distinguished *Halper,* declined to recognize an exception to the general rule, and rejected the prisoners' double jeopardy challenges. *Mayes,* 158 F.3d at 1220 n. 9.

The court in *Mayes* then engaged in a lengthy, well-reasoned analysis of the federal Bureau of Prisons ("BOP") regulations authorizing prison disciplinary sanctions, using the *Hudson/Kennedy*

framework, and concluded that the BOP's regulatory scheme is not "so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct." *Id.* at 1224. The court distinguished the prison setting from other administrative proceedings, taking into account "the fact that a prison's remedial and punitive interests are inextricably related." *Id.* Quoting the Second Circuit's *Hernandez–Fundora* opinion, the court noted that " '[p]unitive interests and remedial interests . . . are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals' and where 'remedial concerns require "punishing" individuals for violent or other disruptive conduct.' " *Id.* (quoting *Hernandez–Fundora,* 58 F.3d at 806, 807).

■ The Second Circuit has not substantively weighed in on the issue since *Hernandez–Fundora* and *Hudson* were decided, and has not seen fit to engage in the type of analysis undertaken by the Eleventh Circuit in *Mayes.* However, several lower federal courts within the circuit, as well as the New York Court of Appeals, have (since *Halper* and *Hudson* ) routinely rejected state prisoners' double jeopardy challenges to disciplinary sanctions imposed under DOCS' administrative scheme, adhering to the traditional rule that prison disciplinary sanctions do not trigger the protections of the double jeopardy clause. *See, e.g., Lisbon v. Goord,* 2003 WL 1990291 (S.D.N.Y. April 29, 2003) (citing *Bolanos* ); *Baker v. Finn,* 2001 WL 1338919 (S.D.N.Y. October 31, 2001) (same); *People v. Hart,* 93 N.Y.2d 825, 687 N.Y.S.2d 617, 710 N.E.2d 263 (1999) (consecutive sentence of 3½ to 7 years upon conviction for escape, in addition to disciplinary sanction of 15 years in SHU for same conduct, did not invoke double jeopardy; citing *People v. Vasquez,* 89 N.Y.2d

521, 532, 655 N.Y.S.2d 870, 678 N.E.2d 482 (1997) (disciplinary sanctions were not "so grossly unrelated to the noncriminal governmental objectives at stake in a prison environment that they may only be viewed as criminal punishment")).

For these reasons, plaintiff's motion for reconsideration is denied.

### CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (Item 85) is granted, the plaintiff's cross-motion to amend the complaint (Item 111) is denied, the plaintiff's motion for reconsideration (Item 124) is denied, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants.

So ordered.